CLOVE SPRING IRON WORKS *v.* M. K. CONE.

*Taxation.   Tax Law of* 1880.

1. A collector's justification must show a legal tax, a legal list, and that his authority was legal.
2. The tax law of 1880 required that real estate should be appraised in 1881, and the appraisal substituted for the last quadrennial appraisal. In 1882, before the expiration of the then quadrennial period, instead of adopting the appraisal of 1881, and using such a form as the statute contemplates for making an annual list, the listers *appraised* the real estate and used the form for making a quadrennial appraisal. *Held* that the list was invalid.
3. The right to go upon a third party's land to cut and remove the wood and timber for twelve years, and to build necessary roads and buildings, is not such an interest that it can be appraised and set in the list as real estate, the purchaser having power to remove the building.

TRESPASS.   Plea, general issue, and special plea that the defendant was collector of taxes for the town of Winhall; replication, etc., and a special replication that the plaintiff had no property liable to be taxed in said town.

Trial by jury, December Term, 1883, VEAZEY, J., presiding. Judgment for the defendant.

On the 1st day of April, 1882, the listers took and subscribed to the following oath :

"I do solemnly swear (or affirm) that I will appraise all the personal and real property subject to taxation in the town of Winhall, so far as required by law, at its true value in money, and will faithfully discharge all the duties conferred upon me by law.   So help me God :"

And on May 15th, 1882, the following oath :

"We do solemnly swear that we have set down all the real estate situated in the town of Winhall according to the best of our information, and we have appraised the same at its just value in money.

It appeared that there were set in the plaintiff's list as follows :   " 4 houses, 1 barn, 8 kilns, $2,400.00," and " 2,278 acres timber, $9.000,"—$11,400.00.

*J. G. Martin* and *J. C. Baker*, for the plaintiff.

It is necessary for the defendant to sustain this justification to prove that the tax-bill, warrant, and all the previous proceedings were legal. *Collamer* v. *Henry*, 16 Vt. 574; *Downing* v. *Roberts*, 21 Vt. 441; *Evarts* v. *Burgess*, 48 Vt. 205; *Buzzell* v. *Johnson*, 54 Vt. 90. The list was invalid, because the listers did not take the requisite oath. R. L. s. 350; *Tunbridge* v. *Smith*, 48 Vt. 648; *Ayers* v. *Moulton*, 51 Vt. 115; *Rowe* v. *Hulett*, Ib. 637. The plaintiff did not have 'such an interest that it could be appraised as real estate. R. L. ss. 276, 293; *Westmore Lumber Co.*, v. *Orne*, 48 Vt. 90.

*Batchelder & Bates*, for the defendant.

The listers properly appraised the 2278 acres of timber owned by plaintiff. It was real estate conveyed to them by deed, and was taxable. It was "visible property;" and the statute made it the duty of the listers to appraise it at its real value in money. R. L. s. 325.

The plaintiffs owned an attachable interest in the land, to wit; the trees themselves standing thereon; and in such locations constituting the principal value of the lot.

If such an interest is not taxable, a very easy way to avoid taxation hereafter, will be to invest largely in standing timber in mountain districts, paying for it about the same price asked for the whole, leaving the worthless soil to be taxed at a nominal sum, to the original owner of the whole.

Whatever construction the court may place upon the term, " manufacturing establishments," as bearing upon their business and scope of operations, it cannot even plausibly be claimed that 2,278 acres of standing timber are exempt under our statute.

The opinion of the court was delivered by

Royce, Ch. J. The defendant attempted to justify the distraint and sale of the property, that this suit is brought to recover for, as collector of taxes for the town of Winhall. It has been repeatedly decided in this state, that to justify a collector of

taxes in distraining and selling property of delinquent tax-payers, he must show that he had legal authority to make the distraint and sale, and that the tax which he is ordered by his warrant to collect is a legal tax. See cases cited in Roberts' Dig. 665.

For a tax to be legal, it must appear that the grand list upon which it is assessed is a legal list. Sec. 16 of No. 78 of the laws of 1880, R. L. s. 332, required that all real estate should be appraised and set in the list in 1881 by the listers at its true value in money on the first day of April in that year; and that such appraisal should be made in connection with the annual list and completed at the same time required by law for annual lists; and that it should be substituted for the last quadrennial appraisal and continue in force in lieu thereof until the next quadrennial appraisal was made. Chap. 24 R. L., requiring quadrennial appraisals of real estate to be made by the listers, provides in sec. 306, that when such appraisals have been established by the equalizing board they shall, with such alterations and corrections from year to year as are specially authorized by law, stand for the valuation of real estate for the succeeding four years. The appraisal made in 1881, which was made a substitute for the last quadrennial appraisal, would stand as the valuation of real estate until the next quadrennial appraisal, which was required by sec. 292 to be taken in 1882. The listers, by sec. 342, are to set real estate included in the last quadrennial appraisal in the list of the person to whom it is taxable at the valuation established by the state equalizing board; and they are only to appraise such additions and repairs as have been made and such real estate as may have been omitted by accident.

The valuation of the real estate set to the plaintiffs in the list of 1882, and upon which the town tax for that year should have been assessed, was fixed by the appraisal made in 1881; and that valuation would remain in force until the quadrennial list of 1882 was taken. The annual list of 1882 did not contain any evidence of what the appraisal in 1881 was, and did not profess to adopt that valuation. The listers evidently proceeded upon

the belief that in making the annual list for 1882, it was their duty to make an appraisal of the real estate, and acting upon that belief did make an appraisal; they substituted their judgment for that of the listers of 1881, which, as we have seen, was made conclusive until the quadrennial appraisal of 1882. Instead of using such a form as the statute (sec. 348) contemplates should be used in making an annual list, they used the form that is required for making a quadrennial appraisal. It will be seen by the certificate of the listers that they appraised the property set in the list to the plaintiffs at its just value in money in April, 1882, and adopted the form of oath that is required to be made to a quadrennial appraisal. It was the right of the taxpayers to have the valuation of their real estate made in 1881 remain as the basis upon which taxes were to be assessed against them until such valuation should be lawfully changed. In this case the listers, instead of setting it in the list at the valuation before fixed as the law requires, made an appraisal and set it in the list at that appraisal; so that, upon this ground, the attempted justification of the defendant under his warrant for the collection of the town tax fails.

The state, state school, and county taxes were assessed upon the quadrennial list of 1882; and it is claimed by the plaintiff that that list, so far as they are concerned, was void, and consequently that no taxes could legally be assessed upon it. The plaintiff, by virtue of the deed executed February 5, 1873, acquired the right to enter upon the land set to them and to Shedd, Andrus & Co., in said list, and cut and remove therefrom all the timber except the spruce, hemlock, pine, tamarack, and balsam, at any time within the period of twelve years from the execution of said deed, and not afterwards; and what timber was not cut within said period was to revert to and become the property of the grantors. And the right was given to make and repair all necessary roads and bridges, and to build such buildings upon said premises as they might desire for their accommodation while cutting said wood and timber, and coaling the same, and to remove the same during or at the expiration of said term.

There were other conditions and reservations contained in the deed which it is not necessary to notice in considering the questions presented by the exceptions.

It is not claimed that the decision of the listers in setting said property in the list is conclusive; so the question is fairly presented, whether the interest of the plaintiff acquired by and described in said deed was real estate, which the listers were authorized and required by law to appraise as such, and set in the list of the plaintiff.

In the years of quadrennial appraisals the listers are required to appraise the taxable real estate in each town; and when the lists come before the State equalizing board it is made their duty to average and equalize the valuation of the real estate in the several counties. Provision is made by s. 314 R. L., for the appointment by the governor of a committee of three to appraise the roadbeds of the railroads in the State, that are not specially exempt from taxation; and it is provided that the sum at which such committee should appraise the same should be the sum at which listers should set each mile of the road bed in the list of the town in which it lies. Previous to the passage of the act No. 4, in 1874, entitled " an act to assess and tax the real estate of railroads in this State," it was not understood that the road-bed and track of a railroad was taxable as real estate, and no provision had been made for their appraisal or authority given to put them in the grand lists. The right of railroads to the use and enjoyment of their road beds and tracks is somewhat analogous to the rights secured to the plaintiff by the deed of February 5, 1873. Both are for profit, and terminate at the will of the party to whom the right is granted.

In the case of road-beds and tracks belonging to railroads, it was deemed necessary to confer authority by express statute to treat them as real estate for the purposes of taxation. The right to treat the interest of the plaintiff here as real estate is claimed under the general law; and unless it was real estate within the meaning and spirit of that law, the listers had no jurisdiction over it as such. It is evident to us, that the words " taxable real

estate," as they occur in the statute defining the duties of listers in making appraisals, do not contemplate such an interest as the plaintiff company is shown to have had. Their right was rather in the nature of an incumbrance upon the land than an ascertainable interest in it; they might avail themselves of it or not as they saw fit. It is difficult to see what interest they had that could be levied upon as real estate. As real estate, there was no right to set it in the list to two different parties, and thus make it subject to double taxation; and it will be observed that the same land was set in the list in this case to the plaintiff and to Shedd, Andrus & Co. It is not easy to see how the State equalizing board could equalize and average lists thus made up. They must look to the acreage and valuation of land as the word is ordinarily understood to intelligently equalize and average its value. Looking at the whole body of the law regulating the making of lists as the bases of taxation, we are convinced that the interest that the plaintiff had, does not come within the definition given of real estate. If the plaintiff had any interest which was subject to taxation, which it is not necessary now to determine, it was in the nature of personal property.

The houses, barn, and kilns, that were set in the list to the plaintiff as real estate, it was agreed by the deed, should be treated as personal property, by giving the plaintiff the right to remove them within the term. They come within the description of buildings erected for the purposes of trade, and probably could be attached and sold as personal property.

We have not been able to find any direct authority upon the question here presented. The cases of *Yale* v. *Seeley*, 15 Vt. 221, *Buck* v. *Pickwell*, 27 Vt. 157, *Fitch* v. *Burk*, 38 Vt. 687, *Sterling* v. *Baldwin*, 42 Vt. 309, were to determine the title to standing or felled timber as between contesting claimants, and whether under the requirements of the Statute of Frauds and that regulating the conveyance of real estate they belonged to the one or the other, and have no application to the matter under consideration.

The plaintiff had no interest in the subject matter that could

be appraised and set in the list as real estate ; and hence it was error to so place it in the list; and the assessment of taxes upon it was void, and the attempted justification under the warrants for the collection of the state, state school, and county taxes upon that list fails.

It is unnecessary to pass upon the other questions presented by the exceptions.

Judgment reversed, and judgment for the plaintiff for $50.60, with interest from February 5, 1883.