No. 13,879.

.FRANK B. WILLIAMS vs. CHARLES L. TRICHE, SHERIFF AND TAX COLLECTOR.

SYLLABUS.

1. As long as the present legal ownership of trees standing upon the roots upon a plantation remain in the owner of the land, they must be assessed with the land and as forming part of it.

2. Where the owner of land makes a contract with another by which he conveys the latter rights in respect to the trees standing by the roots on the land, but rights which fall short of conveying present ownership thereto, assessors are not warranted in separating, for the purposes of assessment the trees from the land, and making the trees the object of direct taxation as corporeal movables, distinct from the land to which they are attached. They cannot bring about a severance in the present ownership of the trees, and the land which does not result legally from the contract. The liability of the party who makes such a contract with the land owner to taxation under his contract rights, would not be enforceable under an assessment made in his name upon the trees themselves.

3. Individuals may make agreements or dispositions as to taxation and as to the payment of taxes which may be binding as between themselves, but such agreements or dispositions cannot have effect as against the State, when, thereby, the parties themselves or the objects of taxation with which they deal are not brought within the grasp of the laws governing taxes and the enforcement of taxes. Assessors and tax collectors, in their action, cannot go outside the existing statutes.

A PPEAL from the Twenty-Seventh Judicial District, Parish of Assumption—*Leche, J.*

---

*Beattie & Beattie,* for Plaintiff, Appellant.

---

*Walter Guion,* Attorney General, and *A. A. Gondran,* District Attorney (*Lewis Guion,* of Counsel), for Defendant, Appellee.

---

The opinion of the Court was delivered by

NICHOLLS, C. J. The plaintiff alleged that by public notarial act, passed in the Parish of St. Mary, on the 26th day of October, 1899, before Wilbur H. Kramer, a notary public in the said parish, and a duly certified copy of which he annexed, petitioner purchased from the Leon Godchaux Co., Limited, the following rights:

The right to deaden cut and remove all cypress trees now standing upon the lands situated in the Parish of Assumption in this State, which he described.

That this right was to last only for ten years, and after that time the right was to revert to the conveyors.

That the said right was a mere personal right to cut the trees upon the said land, and is, if anything, a mere right or credit, having its domicile or place of being at the residence of and domicile of petitioner.

That the said trees were not the property of petitioner until cut and removed, and only in that way and in so far as he does so cut them

and to that extent, will they belong to the petitioner. That the property so acquired was not *in esse,* but it is in future to become such under certain terms and conditions and if property at all was a mere personal right or credit taxable at the domicil of petitioner and nowhere else. That the trees upon that land were mere fruits or crops and, under the law of the State, cannot be separately assessed or taxed from the land on which they are growing, they being in reality still in the possession of the said Leon Godchaux Co., Limited, as the owners of said land, and the right to cut only will give proprietorship and possession to petitioner at some future time and under conditions that may never occur and then only *au fur et au mesure* to the extent each year of his taking advantage of the contract made between himself and the said Leon Godchaux Co., Limited.

That the said lands are now assessed and taxed rightfully in the name of and to the said Leon Godchaux Co., Limited, and they do not, so far as petitioner was aware, contest the assessment nor the taxation thereof. That despite these facts Robert Martin, the assessor of the Parish of Assumption, and a resident of that parish, had assessed the said right of petitioner in the sum of or for a valuation of twenty-four thousand dollars for the taxes due the State and Parish Levee Boards thereon, and the sheriff, *ex officio* tax collector, threatened that in the event of the non-payment he would at once proceed to seize and sell whatever right petitioner may have, alleging that he would sell the trees themselves so that petitioner could not have the future use and enjoyment of his rights under the said contract above set out.

That the whole assessment and attempted levy of these taxes was illegal, null and void as not being on taxable property, and if on taxable property, not taxed at the proper legal domicil thereof. That should the said sheriff proceed to do as he threatens, he will work petitioner an irreparable damage.

The premises considered, petitioner prayed that the said Charles L. Tricke, in his capacity as sheriff and tax collector of the Parish of Assumption, and the said Robert C. Martin, in his capacity as assessor of the Parish of Assumption, be cited to answer thereto, that after due proceedings the said taxes be decreed to be illegal and null, and that the said assessment be nullified and made of no avail, and that the sheriff of the parish be ordered and enjoined to cease from troubling. petitioner, and that the said pretended assessment be erased from the rolls of assessment, and the assessor prohibited from again placing the

same on the same rolls, and the sheriff and tax collector prohibiting from collecting the same.

Petitioner prayed for costs and all and general relief, etc.

The act referred to in plaintiff's petition declares that "the Leon Godchaux Company, Limited, sells and transfers to Frank B. Williams (the plaintiff) the right to deaden, cut and remove all the cypress trees then standing on the property described. The sale was made for and in consideration of the prior payment of forty thousand dollars, which the purchaser paid cash. The sale was made in further consideration of the obligations taken by Williams to construct a canal not less than thirty-five feet in width through the centre of the lands described, at his own expense. It was agreed that Williams should have the right to cut down and use all the wood needed for fuel which he might need to run his dredge-boat while digging the canal, and to run his pull-boat to pull the timber off the land; that Williams should remove one-half of the timber within five years and the balance within ten years; all the trees remaining on said lands after the expiration of ten years shall belong and revert to the Leon Godchaux Co., Limited. It was further agreed that Williams should have no right to grant, sell or convey to any party or corporation the privilege or right either to go through the described lands, to construct a wagon road or railroad, whether narrow gauge or standard gauge, nor to drain through said lands except with the written consent of the Godchaux Company, Limited, and that the latter company shall be responsible for taxes upon bare lands made subject to this contract.

The tax collector answered, pleading first the general issue. He then averred that the naked lands described in plaintiff's petition were legally assessable in the name of the Leon Godchaux Company, Limited, and the assessor, in the performance of his duty, had legally assessed all of the property rights of F. B. Williams on said land, in accordance with law and the contract between the parties.

The District Court rejected plaintiff's demand and he appealed. In his opinion in the case, the District Court used the following language:

"The jurisprudence of the State, in my opinion, is settled that intangible or incorporeal rights can only be taxed at the domicile of the owner where the law fixes their *situs,* and that tangible movables are taxable in whatever place they may be situated. 41 Ann. 645, 49 Ann. 43, 1195.

"This being conceded, the issue herein is restricted to the question

whether under the annexed act of sale before Kramer, notary public, on October 26, 1899. Williams acquired the full ownership of the cypress trees standing on the lands described or simply a right to become the owner thereof *in futuro*.

"Under the common law of England similar questions have often arisen and it seems conceded that a sale of trees to be taken away immediately was not a sale of an interest in the land, but merely of so much timber, that where the trees were to be cut as soon as possible, and even assuming that they were not to be cut for a month the test would be whether the parties really looked to their deriving benefit from the land or merely intended that the land should be in the nature of a warehouse for the trees during that period. Marshall vs. Green, I. C. P., Div. 35, 40.

"In other words, the English courts hold that when the trees or crops produced on the land have already matured and can derive no further benefit from the soil but remained attached to the soil merely for the convenience of the parties they may be sold as chattels, that such a sale does not convey an interest in the land, but is a sale of goods, wares and merchandise.

"Mr. Justice Blackburn in discussing the subject, says: 'The true subject of inquiry in each case is, when do the parties intend that the property is to pass? If the things perish by inevitable accident before the severance, whom do they mean to bear the loss? for, generally, that is a good test whether they intend the property to pass or not, etc.' * * * See Benjamin on Sales, Chapter II.

"An application of these principles to the facts of this case would indicate that if on the 26 of October, 1899, the Godchaux Co. sold Williams the trees that were to grow on the lands described during the ten years following, these trees not yet being *in esse,* or not having yet matured, then the contract was an executory one and the sale was only of a right somewhat similar to a lease; but if, on the other hand, the trees had at the time of the sale already matured and the delay of ten years was granted merely for the convenience of the purchasers, the land being in the nature of a warehouse, then the sale of the trees was absolute and immediately conveyed title to Williams. I do not think there can be any doubt that the latter is the true condition of affairs existing when the sale was passed before Kramer.

"Applying the test suggested by Mr. Justice Blackburn, should all the cypress trees on the land described perish and be destroyed by inev-

itable accident before they are severed from the soil, whom do they mean to bear the loss? Suppose a forest fire or a tornado destroyed all these trees, would the loss be that of Williams or the Godchaux Company under the terms of the agreement? I am clearly of the opinion in the event of such a catastrophe, or in the event of some inevitable accident not attributable to the fault or negligence of the Godchaux Company, that the parties to the sale intend that the loss should be that of Williams.

"The above principles, laid down by the common law writers, it seems to me, apply equally whether the objects are *fructus industriales* or *fructus naturales,* that is whether the crops are the result of the industry of men or the natural growth from the soil.

"The French authorities quoted by the able counsel of plaintiff do not, in my opinion, sustain his position in the present controversy. While it is true that anything attached to the soil forms part of the realty and cannot be taxed separately from the soil, this is true only to the extent that the ownership of the thing attached to the soil is vested also in the proprietor of the soil. If the owner of the soil sees fit to dispose of the thing attached to it, giving at the same time to the vendee the right to sever and remove the thing, it becomes at once a movable, the owner of the soil destroys the tie which makes it part of the realty and the thing is no longer affected with the immobility which the land had attributed to it, and this even before its severance and at the very time the title is vested in some one else.

"This seems to me to be the opinion of Marcadé. Again, the citation of Dalloz, *"Codes Annotes,"* under C. N. 2166, which discusses the conflict between the rights for the creditors of the owner of the soil and the vendees of trees still attached to that soil, in my opinion, only establishes the principle that after a seizure by a creditor having a mortgage anterior to the sale of the trees, the trees cannot be taken away by the vendee because they formed part of the realty at the birth of the mortgage, and as such they are affected by the creditor's mortgage and their severance or mobilization is in violation of the rights of the mortgagee.

"Tant qu'ils sont laisse's debout les arbres faisant partie d'une coupe vendu par le proprietaire continuent de faire partie de l'immeuble en ce sens qu'ils peuvent être compris dans la saisie de cet immeuble pratiquée par les créanciers ayant une hypotheque anterieure a la vente.

"Baudry Lacantiniere in his treatise on Civil Law, under Art. 521, Corresponding to Article 465 of our Code, says: 'Les fruits pendant

par branche et par racine sont immeubles en qualité d'accessoires du sol qui les nourrit. Ils cessent d'avoir ce caractere et deviennent par suite chose mobilieres quand on les considere abstraction faite du fonds auquel ils sont attachés. C'est ce qui arrive dans ces trois cas suivants: 1. Au cas de saisie brandon; 2. A l'egard du fermier de ce fonds; 3. Enfin les fruits pendants sont regardés comme meubles en tant qu'ils sont vendus separément du fonds.'

"Our Supreme Court has held this to be the law in this State. 31 Ann., 246. To my mind, the best evidence that it was the intention of Williams to buy and of the Godchaux Co., Limited, to sell, absolutely, the trees on the lands described in the act before Kramer, is the fact, 1st, that the parties themselves described the object of the sale to be the right "to deaden, cut and remove all cypress trees now standing," etc., not the trees hereafter to grow, but the trees already *in esse*, ready to be deadened and cut and removed; 2. That at the end of ten years all cypress trees remaining on said lands shall belong and revert to the Leon Godchaux Co., Ltd. If they now belong to the Godchaux Company, what is the purpose of this clause?

"Evidently, the parties intended that Williams should and did at once become the owner of all the cypress trees, and if he failed to remove them, in the time specified, then the ownership of the trees should again be vested in the Godchaux Co. And 3rd, That the said Leon Godchaux Co., Ltd., should be responsible for the bare lands made subject of this contract. The parties knew that this valuable cypress was subject to taxation, either as movables or as part of the realty to which they were attached, and if the Godchaux Co. was only to be liable for the taxes on the bare lands, who was, under this agreement, to pay taxes for the cypress? The answer is plain,—it became Williams' duty to do so.

"It is my opinion in this case that the contract between Williams and Godchaux was an absolute sale of all the cypress trees on the lands described, there being the thing sold, the price and the consent. C. C. 2439. The sale was in lump (C. C. 2459) and the delivery constructive. C. C. 2478.

"The price is clearly set forth in the act and the consent of the parties is not only deducible by inference from the general tenor of the contract, but by several specific stipulations as above set forth. The position that the trees are also assessed to the Godchaux Co., is, in my opinion, untenable, and one in which the plaintiff has no interest. The

presumption is that the assessor having assessed the trees to Williams has only assessed the bare lands to the Godchaux Company, and under the view which I have taken of this case, if the trees were included in the Godchaux Company's assessment, the right to complain would only lie with the latter."

## MOTION TO DISMISS.

Appellee moved to dismiss the appeal taken on the ground that in said case neither the constitutionality nor legality of any tax, toll or impost whatever, is raised or involved.

Appellees, after reciting the allegations of plaintiff's petition in their brief, declare, that it is evident that the sole ground of complaint urged by Plaintiff, is that his right to cut trees on the property of the Leon Godchaux Company, has been improperly assessed, that he does not claim that the rights which he acquired are entirely free from assessment and taxation, but that the trees, the right to cut which he acquired, should be assessed in their name and not in his, and that he should not be subject to assessment and taxation until he enforces the right which he acquired from them by reducing the trees to possession. That there is no complaint that the assessor, in placing the cypress trees on certain lands belonging to the Godchaux Company, acted without constituional warrant because of the property being exempt, but because he should not have assessed his property as *trees* since they had not been severed from the soil which belonged to the Godchaux Company, and had never come into his possession, but that all that should have been assessed, was his right to cut such trees, and this at the domicil in St. Mary parish; that the whole matter in litigation was not the legality of the tax but the propriety or correctness of the assessment. In support of this position we are referred to Stubbs vs. Maguire, 32 Ann. 817; Gillis vs. Clayton, 33 Ann. 285; State *ex rel* Rivet vs. Lazarus, 36 Ann. 286; Cobb vs. Maguire, 36 Ann. 801; State *ex rel* David vs. Judges, 37 Ann. 898; Adler vs. Board of Assessors, 37 Ann. 501; Minor vs. Budd, 38 Ann. 99; and State *ex rel* Kock vs. Triche, 52 Ann. 883.

Appellant refers to some of the same cases also to Bertel vs. Assessor, 34 Ann. 575; State vs. Judge, 41 Ann. 541; Meyer vs. Sheriff, 41 Ann. 646; Woolfolk vs. Foubere, 15 Ann. 15; Marin vs. Orleans, and Arrow vs. Weatherly, 6 N. S. 347; Sutton vs. Calhoun, 14 Ann. 209.

He says he is not contesting the *quantum* of taxation, but that he

claims he ought to be assessed for nothing because the property is not assessable.

Plaintiff's prayer is *that the tax be decreed illegal and null,* and the assessment on the rolls be erased.

The State, as we understand, claims that plaintiff is liable to taxation upon trees on the Godchaux plantation, and the plaintiff denies that he is so liable. If, in fact, he is not so liable, the tax claimed is *quoad* him illegal. We think plaintiff's demands strike deeper than the mere assessment, it puts at issue the liability to any assessment at all on the trees. The question of the correctness of the assessment is a consequential one.

The appeal is maintained.

Appellant does not attempt to assign to the contract which he made with the Godchaux Company, a specific legal character; he pronounces it *sui generis*—an "innominate" contract.

He maintains, however, that by and through that contract he did not become *ipso facto* the owner of the trees referred to therein, and if not the owner of the trees themselves, then he is not liable to direct taxation on the trees themselves, however much the property right which he may have acquired through his contract may be taxable.

He contends that what he acquired through his contract was an incorporeal right which though vesting in him, a legal interest in respect to the trees, was not a right of present ownership in the trees themselves. That if the claim of the State be true, then he (Williams) by his purchase, became the owner of each separate inidvidual cypress tree on the Godchaux Plantation, and any person having a judgment claim against him, be it large or small, could cause to be made a direct legal seizure of particular trees or any particular number of trees which the sheriff or constable might select and sell at judicial sale, but that really the only right which a creditor of his would be authorized to sell, under his contract, in execution of a judgment against him, would be the indivisble incorporeal right which he acquired from the Godchaux Company, carrying with it, if sold in execution on the part of the purchaser, the duty to make the canal and carry out the other executory obligations of the contract.

That the trees could not be sold or assigned to any one else, as by the terms of the contract no one but himself and his employees could enter upon the property.

That as between the State and the Godchaux Company, the former

could at any time, for the purpose of assessment of taxes and the enforcement of taxes, hold the trees to be part and parcel of the land, and should the Godchaux Company not pay the taxes on the land, the property, as a whole, could be sold by the State without remedy on his part. Plaintiff quotes the following extract from Pothier in his "Traité des Choses Partie," II Sec., p. 205:

"Lorsque quel qu'un a acheté des bois pour les couper, ou des fruits pendans par les racines, la créance qui resulte de ce contract, est une créance mobiliere; car elle tend à faire avoir a l'acheteur, a lui faire acquerir ces bois et ces fruis, apres, qu'il les aura coupés; lesquelles ne peuvent lui etre acquis plus tot, puisqu'il n' a pas acheté les fonds, dont ils font partie; et par consequent sa créance tend à lui faire acquerir quelque chose de mobiliere; car ces bois, ces fruis, deviennent muebles par la coupe qui en est faite. C'est donc une action ad mobile par consequent une action mobiliere."

Plaintiff contends that while he could employ as many employees of his own during the period of his contract and cut down and carry off during that period as many trees as he might be able to do, he would not be justified with the means at his command in making partial sub-assignments to others in order to extend operations during the period, in view of the reserved interest of the Godchaux Company to all trees which could not be cut down and taken down during the term of the contract by himself, and his own employees. That in view of the uncertainty as to how many trees would be cut during the contract and what particular trees would be cut, it was impossible that the title to any particular trees would pass *ipso facto* by the contract.

In passing upon the issues involved in this litigation, it must be borne in mind that we are not determining the property rights between Williams and the Godchaux Company, but interpreting the legal situation viewed from the standpoint of the enforcement of rights and remedies of the State, as fixed by her own law.

No matter what may be the contract between private individuals, the State is not bound thereby if not in exact accordance with its statutes, any more than are creditors of a succession concerned by any private arrangement made as between themselves by the heirs of the deceased. (C. C. 1432).

Assessors and tax collectors of the State must look alone to the law for guidance in the discharge of their duties. It controls the State's rights and remedies, and officials are not free to depart from the same,

by reason of private arrangements which alter its provisions. It is for the law-maker to modify the laws of taxation from year to year to conform to changing conditions, and until this modificatin be made matters must rest in abeyance, how much soever things themselves alter. It is unquestionably true that up to the present time the Legislature has not, in express terms, provided for the separate taxation of trees while standing attached to land, or provided for the enforcement of such taxes by separate sale of the trees. It has not done so for the reason that contracts having in view the severance of the ownership of trees so situated from the ownership of the land to which they are attached are contracts of a very recent date in Louisiana.

We have recently held in the case of the Globe Realty, Co. vs. Lockett, Sheriff, that where parties have, by a contract, clear, positive and unambiguous, severed the present ownership of the trees, though standing by the roots at the time of the contract, from the ownership of the land. at the time of the contract, the later can be given effect to by taxation upon the land and the trees separately and by enforcement separately. The matter is full of difficulty, in view of the constantly shifting character of the laws of taxation and of the great complications to the rights and remedies of private individuals which will flow from a system.

The language of the act between Williams and the Godchaux Company as to what was the object of the contract differs from that in the case of the Globe Lumber Co. vs. Lockett, Sheriff.

In that act the trees themselves were declared to be the direct object of the sale, and the contract one of immediate conveyance of ownership. In the case at bar the thing conveyed by the Godchaux Company was not declared to be "the trees," but "the right to" cut down and remove all cypress trees on certain described land within an assigned, fixed period (in which period the vendors seem to have had an interest of their own), for and in consideration of the price of forty thousand dollars, which was paid cash, and the further cnsideration on the part of Williams to construct a canal of certain dimensions over a certain designated portion of the Godchaux Plantation, the work to be started and ended by a given time. One of the stipulations of the contract was that the trees remaining on the plantation, at the end of the period fixed, were to revert to the owners of the land, and that the latter was to pay the taxes on the "naked land." What is the proper construction of this contract? Plaintiff does not pretend to

affix to it a particular designation or character, they call it an "innominate" contract. Does the contract convey a present ownership in all trees on the land, or is full ownership held in abeyance until the trees are cut down by the plaintiffs? The defendants contend that the trees, though immovable in fact so long as they are standing upon the roots, can be "mobilized" by "anticipation" for the purposes of sale.

There can be no question as to the right and power of the General Assembly to authorize such a mobilization should it elect so to do. In Weil & Co. vs. Kent, we said: "It is within the power of the General Assembly to make such classification of things into movables and immovables as it may think proper—to make them the one or the other at different times, to fix and determine the rights and obligations of parties touching them in view of their shifting from one classification to the other, provided this should be done under circumstances such as not to impair the obligation of contracts. Parties taking rights after the Legislature should have acted upon the subject, have to do so with reference to existing laws. In the case cited, we held that the Legislature had provided for the special case of the furnishing of supplies for cultivating a growing crop, that the crop should be considered *quoad* the privilege securing the payment of the debt due for the supplies as a movable, but the question remains, has the law-making power exercised its rights in this respect as to "sales" of standing trees and the taxation thereon.

Our law considers a contract of sale perfect between the parties and the property of right acquired by the purchaser with regard to the seller as soon as there exists an agreement, though the object has not yet been delivered nor the price paid; (C. C. 2456); but it declares that with respect to immovable effects, although by the rule referred, the consent to transfer vests the ownership of the property in the obligee, yet this effect is strictly confined to the parties until the actual delivery. If the vendor, being in possession, should, by a second contract, transfer the ownership of the property to another person who gets the possession before the first obligee, the last transferee is considered as the owner, provided the contract be made on his part *bona fide,* and without notice of the former contract. In like manner, if movable property has been alienated by contract, but not delivered, it is liable, in the hands of the obligor, to seizure and attachment in the hands of his creditors."

Have the trees referred to in the contract between Williams and the Godchaux Company been delivered yet, and can they be delivered,

under the law, as it stands, until they have been cut down, and if they have not, are they not to be considered as to all the parties other than themselves as still unsold, and liable to be seized and sold as part of the plantation? If these trees were sold, was it contemplated by the parties that the legal title thereto should pass at once to Williams, and before he had performed the executory obligations of the contract? The obligation to construct a canal on the Godchaux Plantation was, under the language used, not a collateral obligation of the contract, but part of the direct consideration for the same. Something remained for the plaintiff to do before he acquired full ownership of all the trees. There is force in the contention of the plaintiff which goes to disprove a present absolute ownership in the trees.

Suppose that at the end of a year or two Williams, by stress of financial difficulties, should go or be forced into bankruptcy, with the trees uncut and the canal not dug, could he surrender the trees as corporeal movables belonging to himself separately and distinct from his contract obligations? Could his syndic sell the trees as corporeal movables separately and distinct from Williams' contract obligations? We think not. All he could surrender and all his syndic could sell would be his rights, coupled with his obligations under the contract.

However, the contract may be classified, we do not think the contract is one of an absolute present sale, with conveyance of legal title to the trees.

Under our law, the contract is not a dismemberment of the ownership of the land. Plaintiffs acquired no interest in the land through it. It will not do to say that the plaintiff "became substantially" the owner of the property. Until the title actually shifts, the owner of the legal title for the purposes of taxation remains *quoad* the State, the actual owner. It is in his name that the property must be taxed, and it is to him that all notices must be sent. As a matter of course, contract rights and obligations exist and may be enforced between the owner of the legal title and third parties inside of the legal title, if that expression can be used, but until the title actually shifts the State has nothing to do with them, unless she so expressly declares herself willing to do by statute.

The clause in the contract between the plaintiff and the Godchaux Company has been given, we think, by the district court, a broader and more extended effect than it called for. As between themselves the parties assumed the payment by each of a certain proportion of the

taxes for which *quoad* the State, Godchaux & Company, were primarily resopnsible for the whole. (Miller vs. Michoud, XI Rob., 232).

The usufructuary as between himself and the owner of the land has to pay the taxes, but the State deals with the owner of the land, and the property is assessed in his name.

It frequently happens that a person primarily held for a debt, may make arrangements between himself and some third person that the latter should himself pay the whole debt or a certain proportion of it, but this is a mere personal obligation, enforceable by a personal action between the parties. State assessors and State tax collectors are not authorized on behalf of the State to modify or novate the original rights of the State, and accept this personal obligation and severance, unless authorized so to do by statute.

Neither the assessors, the tax collectors, nor the courts have the right to decide for the State that it is to her interest that this should be done. It is for the Legislature to decide that matter.

Stress is laid by the District Court upon the expressions used in the act between the plaintiff and the Godchaux Company, that all cypress trees remaining upon the land, after the expiration of ten years, shall belong and "revert" to the Godchaux Company, Limited.

It is said that the trees could not revert to the latter unless the ownership of the trees had not prior to that time passed out from that company. In construing a contract, we should not seize upon particular words used 'n it in order to fix the rights and obligations of parties, but look to the entire act. We have so held repeatedly. Tete vs. Lanaux, 45 Ann, 1346, and authorities.

The language may well have been intended by the parties to restrain the generality of the expressions used in the first part of the contract when referring to the things covered by it.

In the first part of the act the right granted by the Godchaux Company, was "the right to cut *all* the cypress trees now (then) standing" on the property, while the closing part of the act restricts the right to such trees as they could and would cut within a certain time.

The District Court seems to have reached its conclusions that the contract evidenced an absolute present sale of all the cypress trees on the land principally for the reason stated that, were the trees or part of them to be destroyed the loss of the same would fall upon Williams, and their loss falling upon Williams, he must have been "their owner."

The loss of the trees might fall upon Williams and yet not be a loss resulting to him in right of "the ownership of the trees, but of his right "to ownership of the right to deaden, cut and remove," which he acquired by purchase. Under our law (Article 2449, C. C.), not only corporeal objects, such as movables and immovables, live stock and produce, may be sold, but also incorporeal things, such as a debt, an inheritance, a servitude or any other rights.

We are not prepared to say, under the terms of plaintiff's contract with the Godchaux Company, that the latter were left by the contract without any interest in the trees.

But whatever may be the rights and obligations of the parties themselves, which may be worked out under that contract, we are of the opinion that 't left the legal title of the trees in the owners of the land upon which they were standing, and that is the pivotal fact in this case. We are of the opinion that plaintiff's claim, that he is not liable to taxation on said trees themselves by reason of his contract with the Leon Godchaux Company, referred to in the pleadings, and his demand that the said tax advanced against him by reason of the same, and the assessment of the said tax in his name, be decreed illegal, null and void, are just and well founded.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby annulled. avoided and reversed, and it is now ordered, adjudged and decreed that the tax claimed against the plaintiff, as owner of the cypress trees themselves, which are referred to in the contract made on the 26th day of October, 1899, by act before Wilbur H. Kramer, notary public, between the plaintiff herein and the Leon Godchaux Company, Limited, be and the same is decreed null, void and of no effect, and the assessment as made upon such trees is ordered erased from the records with full reservation to the officers of the State to enforce plaintiff's liability to taxation under his contract aforesaid in a legal manner.

*Blanchard, J.,* dissents.

*Provosty, J.,* takes no part, not having heard the argument.

Rehearing refused.