Argued March 17, reversed and remanded April 13, rehearing denied July 20, 1920.

## NEHALEM TIMBER CO. *v.* COLUMBIA COUNTY.

(189 Pac. 212; 190 Pac. 318.)

**Taxation—Land Granted in Aid of Construction of Railroads Taxable Only to Extent of Railroad's Interest.**

1. Under Acts of Congress, July 25, 1866, June 25, 1868, April 10, 1869, and May 4, 1870, granting land to aid in the construction of railroads, construed by the federal courts as vesting title in the railroad companies only to the extent of $2.50 per acre and as leaving the balance of the estate in the government, the only taxable interest in the land is that of the railroad company at the value mentioned.

**Taxation—Only Legal Title to Land Subject to Taxation.**

2. Under Section 3551, L. O. L., and Sections 3552 and 3586, as amended by Laws of 1913, page 325, Sections 1, 2, providing for

the taxation of property not exempt and defining lands, real estate, and real property, the legal estate alone is the subject of taxation.

**Taxation—Interest Under Executory Contract of Sale of Standing Timber not Taxable.**

3. An executory contract for the conveyance of standing timber creates only an equitable estate in the grantee, which is not subject to taxation.

**Quieting Title—Property must not be in Possession of Person Other Than Plaintiff.**

4. In a suit to quiet title plaintiff must either be in possession or show that the property is not in the actual possession of another.

**Quieting Title—Necessary Allegations in Suits to Quiet Title or Remove Cloud Stated.**

5. In a suit to quiet title plaintiff must assert his 'own title in apt terms and declare that defendant claims some interest, without defining it, and defendant is then required to allege the nature and extent of his claim; but in a suit to remove a cloud plaintiff must set up his own title, declare the asserted estate of defendant, and disclose the reasons why it is void.

**Quieting Title—Executory Purchaser of Standing Timber Entitled to Maintain Suit to Remove Cloud.**

6. A purchaser of standing timber under an executory contract who has not paid the purchase price in full, so as to acquire a legal estate, may maintain a suit to remove a cloud from the title.

**Taxation—Invalid Assessment Held a Cloud on the Title.**

7. An assessment of property which was taxable only to the extent of a railroad company's interest under a grant from the government to an executory purchaser of standing timber at a value largely in excess of the value of the railroad company's interest constituted a cloud on the title.

**Taxation—Person Having No Taxable Interest not Limited to Appearance Before Board of Equalization.**

8. Where land was assessed to an executory purchaser of the standing timber, the filing of the assessment-roll was not notice to him, since he had no taxable interest in the property, and his right to appear before the county board of equalization did not deprive him of the right to maintain a suit to remove the cloud from the title on the theory that it constituted a plain, speedy, and adequate remedy at law.

**Taxation—Offer to Pay Proper Tax not Necessary Where Plaintiff was not Taxable.**

9. Where property taxable only to the extent of a railroad company's interest under a grant from the government was assessed at a value largely in excess of such interest to an executory purchaser of the standing timber, he was not required to do equity by paying or tendering the tax computed on a proper valuation of such interest as a condition of having the cloud on the title removed, as he had no taxable interest in the land.

Taxation—Agreement by Purchaser of Standing Timber to Pay Tax of No Concern to County.

10. An agreement by an executory purchaser of standing timber to pay all taxes lawfully assessed against the land until the timber is severed is a matter with which the county as a taxing power has no privity or concern.

Taxation—Property not Taxable to Purchaser from United States Until Completion of Contract.

11. Under Section 3554, L. O. L., as amended by Laws of 1913, page 15, exempting property of the United States from taxation, land is not taxable against a purchaser from the United States until full completion of the contract.

### PETITION FOR REHEARING.

Appeal and Error—Petition for Rehearing Insufficient.

12. Under Supreme Court Rule No. 25, 89 Or. 721 (173 Pac. xi), as to form of applications for rehearing, an application not specifying error, nor indicating what modification of the opinion was desired, *held* insufficient.

Pleading—Demurrer Assumes Truth of Allegations.

13. Whether the allegations of a complaint be in fact true or not is not to be determined on demurrer, but they must be taken as verities.

From Columbia: JAMES A. EAKIN, Judge.

Department 1.

This is a suit against Columbia County and its sheriff to remove a cloud upon the plaintiff's title and interest in certain timber lands in that county. In substance, it is averred in the complaint that the realty in question was included in the land granted to the State of Oregon by the United States government by the acts of Congress of July 25, 1866 (14 Stat. 239), June 25, 1868 (15 Stat. 80), April 10, 1869 (16 Stat. 47), and May 4, 1870 (16 Stat. 94), to aid in the construction of railroads; and that by mesne conveyances the title came to the Oregon & California Railroad Company and ultimately to the Southern Pacific Company. It is further stated that prior to October 22, 1914, in pursuance of a joint resolution of Congress, the United States filed its bill in equity

in the federal courts for the district of Oregon, to forfeit the title of the railway companies to a large quantity of the lands granted by the United States under the congressional legislation alluded to, including the lands here involved, on the ground that the companies had not complied with the conditions of the several congressional statutes; that the federal court of original jurisdiction granted the prayer of the complaint, but on appeal to the Circuit Court of Appeals and finally to the Supreme Court of the United States it was held, reversing the decree, that the provisos in the grant were not conditions subsequent, but were covenants, and deciding that the interest of the companies in the lands did not exceed $2.50 per acre, and that the realty should be sold in accordance with such legislation as Congress might see fit to provide therefor. (See *Oregon & C. R. Co.* v. *United States,* 238 U. S. 393 (59 L. Ed. 1360, 35 Sup. Ct. Rep. 908.) It is said further in the complaint, in substance, that afterward on petition of the Oregon & California Railroad Company, the Southern Pacific Company and others, and upon notice to all parties concerned, the United States Court of Appeals for the Ninth Circuit, wherein the cause was then pending, granted leave to the United States District Court for Oregon to sell the timber on said lands, including that on the property here involved, on account of its being endangered by fire, in pursuance of which permission the court appointed a commissioner with whom the plaintiff contracted on October 22, 1914, for the purchase by it and sale by the commissioner of the timber on seven sections of land in Columbia County. According to the complaint, which sets out *in haec verba* the contracting part of the agreement, omitting the recitals of the legislation

and litigation already mentioned, it is said in the contract:

"The commissioner hereby agrees to sell and convey, and the purchaser hereby agrees to purchase, all the timber standing and being upon those certain lands situated in Columbia County, Oregon, particularly described as follows:"

—succeeded by a designation of the lands by legal subdivisions. The contract specified a total purchase price of $192,498.13. It declared a certain value upon the timber on each section of the land, mainly by quarter-sections. The sum of $30,000 was paid upon the execution of the agreement and the balance was to be paid before June 10, 1919. No timber was to be cut upon any section until the full value thereof on that section, as set by the contract, was entirely paid. It was stipulated that the purchaser should cut and remove all merchantable timber from all of the lands described in the instrument, prior to June 10, 1919. A right of entry upon the land and the privilege of constructing buildings, trails, wagon roads, logging roads and railroads necessary for the cutting and removing of the timber, were granted to the purchaser, the plaintiff here, and it was required to remove all such appurtenances by June 10, 1920. Finally, the purchaser agreed—

"to pay, before the same become delinquent, all taxes lawfully assessed or levied on or after March 1, 1914, upon the lands described, provided, that whenever the purchaser may have paid for, cut and removed all the timber from any section or sections, it shall not be required to pay taxes thereafter levied and assessed against such section or sections."

It is alleged that the plaintiff has not paid for any of the timber on three of the sections; that on May 25, 1916, it paid for timber on two other sections the

price stipulated in the contract, and on March 28, 1917, it paid for a third section. As to the seventh section, it is averred that the plaintiff paid for and removed all of the timber growing thereon prior to March 1, 1916.

It is said in the complaint that on April 23, 1917, the Supreme Court of the United States affirmed the decree of the federal trial court restraining the Railway Company from selling or disposing of any of the timber situated upon any of the lands in question, and further held that the only interest or title which the Railway Company had in any of the lands was to the extent of $2.50 and no more, and that by the act of Congress of June 9, 1916 (39 Stat. 218), the title to the lands and timber was vested in the United States for the purpose of selling and disposing of the same as therein provided, from the proceeds of which sale the Railway Company should be paid the sum of $2.50 per acre, less such sums as are chargeable to it under that act.

The bone of contention here is the taxes assessed against the property for the year 1916. It is said that for that year the assessor listed six sections as the property of the plaintiff, valuing them at a total of $209,140, running from $30 to $400 per acre. The theory of the complaint seems to be that the legal value of the only assessable interest in the property, that of the companies, was $2.50 per acre; that on March 1, 1916, the plaintiff had no interest in the sections listed to it on the roll and hence was not assessable at all; that other property in the county was rated at its true cash value, but that the assessment of the land in question, when measured by the decisions of the Supreme Court of the United States, was grossly inequitable and discriminatory against the plaintiff. The plaintiff claims that the proceed-

ings described constitute a cloud upon its title, which should be removed by a decree of the court.

A general demurrer to this complaint was sustained, the plaintiff refused to plead further and decree was entered dismissing the suit, from which this appeal was taken. .      REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. R. Sleight.*

For respondents there was a brief and an oral argument by *Mr. Glen R. Metsker.*

BURNETT, J.—1–3. As recited by the complaint, the plain effect of the legislation of Congress as construed by the federal courts was to vest in the railroad companies a title to the land to the extent of $2.50 per acre, and no more, and the balance of the estate remained in the United States government. At the utmost, therefore, the only taxable interest in the realty was that of the Railroad Company at the value mentioned. Section 3551, L. O. L., declares that:

"All real property within this state, and all personal property situated or owned within this state, except such as may be specifically exempted by law, shall be subject to assessment and taxation in equal and ratable proportion."

Section 3586, L. O. L., as amended by Section 2 of Chapter 184, Laws of 1913, requires assessments to be made on the lands of each owner named in the roll as of March 1st of each year. In other words, the status of property on that date fixes its assessability. As amended by the same chapter, Section 3552, L. O. L., defines the terms "lands," "real estate" and "real property" as being so construed as to include:

"The land itself, * * with all buildings, structures, substructures, superstructures and improvements erected upon, under, or above, or affixed to the same, and all rights and privileges thereto belonging or in any wise appertaining; * * and all mines, minerals, quarries, fossils and trees, in, under, or upon the land."

For tax purposes this legislation inseparably yokes the timber to the land on which it is growing. The statute was further amended in 1919, but as only the taxes of 1916 are here involved, no notice will be taken of the latter legislation. It is a general principle that taxes follow the legal title, and this seems to be the sense and spirt of this statute. It refers to the land itself, which includes the growing timber thereon. The taxing power is not concerned with indefinite equities. It is said in Section 3586, L. O. L., as so amended, that—

"No assessment shall be invalidated by a mistake in the name of the owner of the real property assessed, or by the omission of the name of the owner, or the entry of a name other than that of the true owner, if the property be correctly described."

All of which indicates that the legal estate alone is the subject of taxation.

*Fletcher* v. *Alcona Township,* 72 Mich. 18 (40 N. W. 36), was a case arising under a tax statute similar to that of this state. The plaintiff had conveyed the land to another, reserving all the pine timber standing thereon. The land was assessed to the grantee and in a separate list the timber was set down as the personal property of the plaintiff. Having paid the resulting tax under protest, the plaintiff sued to recover it. The court sustained his contention, saying:

"The ownership of timber standing and growing on land is an interest in the land itself, and, under

this statute, assessable as realty. * * This timber standing and growing upon these lands, for the purposes of the assessment and collection of taxes, was real property, and no valid charge could be created against the plaintiff or lien acquired specifically upon the property by assessing it as personal. * * The tax is on the land, and includes the whole estate. If the land is sold for the tax, the deed conveys the land therein described and is *prima facie* evidence of title in the purchaser.''

See, also, *Clove Spring Iron Works* v. *Cone,* 56 Vt. 603; *Williams* v. *Triche,* 107 La. 92 (31 South. 926). .

*Anderson* v. *Miami Lumber Co.,* 59 Or. 149 (116 Pac. 1056), holds that a conveyance of timber growing upon land passes an interest in the real property. But here we have, not a conveyance of the timber, but an executory contract for such transfer of the title, which has an effect to create only an equitable estate in the grantee: *Burkhart* v. *Howard,* 14 Or. 39 (12 Pac. 79); *Sievers* v. *Brown,* 34 Or. 454 (56 Pac. 171, 45 L. R. A. 642); *Higginbotham* v. *Frock,* 48 Or. 129 (83 Pac. 536, 120 Am. St. Rep. 796); *Collins* v. *Creason,* 55 Or. 524 (106 Pac. 445).

4-6. Having in mind that this is a suit, not to quiet title, but to remove a cloud, we have recourse to the doctrine of *O'Hara* v. *Parker,* 27 Or. 156 (39 Pac. 1004). That case points out the distinction between a suit to quiet title and one to remove a cloud. In the former, the plaintiff must either be in possession or at least show that the property is not in the actual possession of another, and, asserting his own title in apt terms, declare that the defendant claims some interest in the estate, without defining it. The latter is then required to declare the nature and extent of his claim by appropriate allegations. In a suit to remove a cloud the plaintiff must set up his own title, declare the asserted estate of the defendant,

and disclose the reasons why it is void. In *O'Hara*
v. *Parker* the court cites with approval this excerpt
from Pomeroy's note to Section 1399, Volume III, of
his Equity Jurisprudence:

"When the estate or interest to be protected is
equitable, the jurisdiction should be exercised whether
the plaintiff is in or out of possession, for under
these circumstances legal remedies are not possible;
but when the estate or interest is legal in its nature,
the exercise of the jurisdiction depends upon the
adequacy of legal remedies. Thus, for example, a
plaintiff out of possession, holding the legal title, will
be left to his remedy by ejectment. * * Where, on
the other hand, a party out of possession has an
equitable title, or where he holds the legal title under
such circumstances that the law cannot furnish him
full and complete relief, his resort to equity to have
a cloud removed ought not to be questioned."

Here we have a case in which the plaintiff con-
tracted for an estate in lands embodied in the owner-
ship of the timber growing thereon. Having paid
$30,000 of the purchase price and not having paid
the remainder, it had an equitable estate only, which
would not ripen into a legal estate until the purchase
price was fully paid. It was thus in a position to
maintain a suit to remove a cloud.

"A cloud on title is an outstanding claim or en-
cumbrance which if valid would affect or impair the
title of the owner of a particular estate, and which
apparently and on its face has that effect, but which
can be shown by extrinsic proof to be invalid or to
be inapplicable to the estate in question": 11 C. J.
920.

7. The property was assessed directly to the plain-
tiff, implying that it held the fee to the realty in
question. It was assessed at a value greatly in ad-
vance of that established by the congressional legis-
lation and the decisions of the Supreme Court of

the United States. In very truth, as disclosed by the complaint, the only assessable interest in any event, by whatever name listed, was this $2.50 per acre held by the Railroad Company. Moreover, the assessment of the fee to the plaintiff was untrue, because it had only an equity in the estate covering the ownership of the timber, and that only to the extent of the purchase price it had paid. If the claim of the county as thus asserted in its assessment was carried out to its full fruition, the result would be to deprive the plaintiff of its equity which is subordinate to the legal title, because it would eventuate in the sale of the legal title for the satisfaction of the taxes.

8. It is urged on behalf of the defendants that the filing of the assessment-roll wherein the fee' of the property was assessed to the plaintiff was notice to it compelling its appearance before the county board of equalization, where, by petition, it could have secured the proper correction affording it a plain, speedy and adequate remedy at law, which it neglected. *Ankeny* v. *Blakeley,* 44 Or. 83 (74 Pac. 485), is cited in support of this contention. In that instance Ankeny held a large block of stock in the First National Bank of Pendleton. The assessor listed all of the stock of the bank to the bank itself, instead of to the individual holders. Learning of this, the bank, by its officers, appeared before the board of equalization, complaining of the assessment on that ground, and secured its cancellation. But the board then assessed Ankeny and other stockholders for the amount of their holdings of the stock, whereupon the suit was instituted to correct the assessment for overvaluation and other alleged defects. The defendants here cite that case as requiring the plaintiff to pursue the remedy of appearing before the board

of equalization as the bank did in that instance. That case was made to depend upon the fact that the bank voluntarily appeared before the board and not in response to any compulsory process. The filing of the assessment-roll is indeed notice, but only to those to whom notice is due, that is to say, to owners of property. It is not notice to those who are not concerned by reason of having no taxable interest in the property involved. So here, as we have shown, not having the legal title to the property and not being taxable for it, the plaintiff was not affected, as with notice, by the filing of the assessment-roll. As a consequence it was not compelled to appear before the board of equalization, and it is not concluded by the rule that it had a plain, speedy and adequate remedy at law in that form.

9, 10. It may be contended that the plaintiff has not done equity by paying or tendering the tax computed on a valuation of the property at $2.50 per acre and for that reason is not entitled to relief. We must remember, however, that since it has not a taxable estate in the realty the plaintiff is not obligated to the county for any tax upon it, whatever its liability may be when the timber becomes personalty by severance from the land. True enough, it covenanted with the other contracting party to pay all taxes which may be lawfully assessed against the land until the timber is severed, but the county as a taxing power has no privity or concern with that stipulation. As said in *Williams* v. *Triche,* 107 La. 92 (31 South. 926):

"No matter what may be the contract between private individuals, the state is not bound thereby, if not in exact accordance with its statutes, any more than are creditors of a succession concerned by any private arrangement made as between themselves by the heirs of the deceased."

11. "All property, real and personal, of the United States and of this state, except land belonging to this state held under a contract for purchase thereof," is exempt from taxation: Section 3554, L. O. L., as amended by Chapter 4, Laws 1913. In an extended note to *Mint Realty Company* v. *Philadelphia,* 218 Pa. St. 104 (66 Atl. 1130, 11 Ann. Cas. 388), the doctrine is established that until full completion of a contract to purchase realty from the United States, the land is not taxable as against the purchaser. The doctrine of that case and its note is applicable to the interest of the United States in the realty here involved, so far as the same is affected by the executory contract to purchase the timber. On the principle that the legal title alone is subject to taxation, and the only semblance of it being the $2.50 per acre already mentioned, vested in the Railroad Company, the effort to tax the plaintiff at the largely increased value upon its bare equity was, *pro tanto* at least, a cloud upon its title and under the authority of *O'Hara* v. *Parker,* 27 Or. 156 (39 Pac. 1004), being the owner of an equitable estate which was liable to be defeated by the enforcement of the assessment, it was entitled to maintain the suit to remove the cloud. Its complaint indeed stated a cause of suit and was not amenable to the demurrer. The decree of the Circuit Court is reversed.

REVERSED AND REMANDED.

BENSON, HARRIS and BEAN, JJ., concur.

Rehearing denied July 20, 1920.

PETITION FOR REHEARING.

(191 Pac. 318.)

Department 1.

On petition for rehearing.    REHEARING DENIED.

*Mr. Glen R. Metsker,* for the petition.

*Mr. Richard Sleight, contra.*

BURNETT, J.—12. The petition of the defendants for rehearing is in these words:

"Now come the respondents above named and respectfully petition the court for a rehearing of the above-entitled cause and for a modification of the opinion of the court therein."

This so-called petition is clearly insufficient under Rule 25 of this court, 89 Pac. 721 (173 Pac. xi), requiring that:

"All applications for rehearing shall be by typewritten or printed petition, signed by counsel, setting forth without argument wherein it is claimed the court has erred."

There are no specifications of error; neither is there the slightest indication of what modification of the opinion is desired. Under these circumstances the petition properly might be summarily dismissed.

Referring, however, to a brief filed on behalf of the defendants, and another filed by a special assistant of the United States Attorney General as *amicus curiae,* we divine that the defendants fear the opinion has gone to the length of deciding that in all the history of the land grants mentioned, the interest of

97 Or.—8

the railroad companies in the lands involved never amounted to more than $2.50 per acre. It seems that the defendants apprehended the result of this would be that the different counties containing railroad lands would be compelled to refund to the United States moneys which the general government has paid to them for taxes assessed on the full actual cash value of the lands in the name of the railroad companies while in that ownership, which payments were made in adjustment of the title to the land, as between the general government, the railroad companies, and the several counties.

We must remember that the decison brought here for review was on a demurrer to the complaint, and that it concerned only the taxes of 1916. It is common learning that on general demurrer the complaint must be taken as true. It appears from that pleading in the case in hand that in litigation between the United States and the railroad companies to adjudicate the rights of the several parties in the lands involved, with others, it was decreed that the interests of the railroad companies in the property amounted only to $2.50 per acre; that the remainder was the property of the United States, and that the companies were restrained from selling the land or the timber until Congress should provide for a sale of the property and the extinguishment of the railroad title. As an ancillary part of the procedure, by consent of all parties to the litigation a sale of the timber separate from the land was ordered. In pursuance of this the plaintiff here did not actually purchase the timber, but contracted to buy it. As to the lands particularly involved, it had not paid for the timber. The complaint shows that as to the taxes of 1916 the plaintiff was not the owner of the timber on March 1st of that year, the date to which taxability

of property is referable, but that the lands themselves had been assessed to it, not at the value of $2.50 per acre, alleged to have been fixed by the litigation in question in the federal courts, enforcing the covenant of the grant, but at what the assessor deemed to be their actual cash value, ranging from $30 to over $400 per acre.

13. Whether these allegations be in fact true or not, is not to be determined on demurrer. They must be taken as verities. Even if true, they have nothing to do with the taxes assessed against the property while the railroad companies were confessedly the owners of the full title thereto. The instant litigation has to do only with the taxes of 1916. The taxes for preceding or succeeding years are not to be adjudicated by anything in this proceeding. As pointed out in the former opinion, the plaintiff acquired only an equity in the lands, and that, too, only as to the timber. The assessor had no right to list the realty as the property of the plaintiff, and a proceeding thereunder to sell the land as the property of the plaintiff would cast a cloud upon its equitable title to the timber.

The petition for rehearing is insufficient to present any question. The arguments contained in the briefs are not by the mark, as they refer to matters not here involved. The petition is therefore denied.

REVERSED AND REMANDED.   REHEARING DENIED.

BEAN, BENSON and HARRIS, JJ., concur.